IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JERRY YOUNG** § | | **PLAINTIFF** |
| § | | |
| v. § | | **1:06-CV-966-LG-RHW** |
| § | | |
| **MISSISSIPPI STATE PORT AT GULFPORT,** § | | **DEFENDANTS** |
| **MISSISSIPPI STATE PORT AUTHORITY,** § | | |
| **MISSISSIPPI DEVELOPMENT AUTHORITY,** § | | |
| **CROWLEY AMERICAN TRANSPORT,** § | | |
| **INC., CROWLEY LINER  SERVICES, INC.,** § | | |
| **and UNKNOWN DEFENDANTS** § | | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS MATTER COMES BEFORE THE COURT upon the Motion of the Defendants, the Mississippi State Port Authority ("MSPA"), the Mississippi Development Authority ("MDA"), and the Mississippi State Port at Gulfport to Dismiss [4] the above styled and numbered civil action.  Plaintiff has not responded to the Motion.[1]  The civil complaint centers around Plaintiff's allegations that damages to his home, caused by the now infamous natural disaster known as Hurricane Katrina, resulted in part from the MSPA's and MDA's failure to act prior to and during the declared state of emergency.

## DISCUSSION

The Mississippi State Port Authority is an agency of the State of Mississippi.[2]  By statute, the MSPA exists to "encourage the promotion, development, improvement, and expansion of the

---

[1] Pursuant to local rule 7.2(C)(2) "if a party fails to respond to any motion, other than a motion for summary judgment, within the time allotted, the court may grant the motion as unopposed."

[2] MISS. CODE ANN. § 59-5-21.  Although the Plaintiffs have also named the "Mississippi State Port at Gulfport" as a defendant in this matter, such an entity does not exist under Mississippi law.

state's port, harbors and inland waterways."[3]  The MSPA is empowered "to set aside, or lease all or portions of any lands, roads, docks, sheds, warehouses, elevators, compresses, floating dry docks, graving docks, marine railways, tugboats, or any other necessary or useful improvements constructed or acquired by it to individuals, firms, or corporations, public or private, for port, harbor, commercial or industrial purposes."[4]  The Mississippi Development Authority is also an agency of the State of Mississippi.[5]  The MDA was created by the Legislature to assist in the economic development of Mississippi.  The remaining defendants are all foreign corporate entities who either lease MSPA port facilities or provide services to the MSPA and its lessees.

Recognizing its exposure to the risks associated with hurricanes and tropical storms, and in accordance with its statutory authority under the Mississippi Emergency Management Law, MISS CODE ANN. § 33-15-1 *et seq.,* the MSPA promulgated the "Mississippi State Port Authority at Gulfport Hurricane Procedures."[6]  The MSPA hurricane procedures were established as "guidelines and procedures for Port Authority personnel before, during, and after a tropical storm

---

[3]MISS. CODE ANN. § 59-5-3.

[4]MISS. CODE ANN. § 57-5-35.

[5]MISS. CODE ANN. § 57-1-2.

[6]Miss. Code Ann. § 33-15-31(a) provides:
(a)  The governing bodies of the political subdivisions of the state and other agencies designated or appointed by the Governor are authorized and empowered to make, amend, and rescind such orders, rules, and regulations as may be necessary for emergency management purposes and to supplement the carrying out of the provisions of this article, but not inconsistent with any orders, rules and regulations promulgated by the Governor or by any state agency exercising a power delegated to it by him.

or hurricane striking in proximity to the Port of Gulfport."[7]  On August 29, 2005, Hurricane Katrina decimated the Mississippi coast.  Buildings, containers, vehicles and materials stored or kept at the port facilities by MSPA's lessees were transformed and reduced to flying and floating debris.  This debris allegedly collided with Plaintiff's home causing extensive damage.  Plaintiff has brought claims of negligence, gross negligence, and trespass against the corporate defendants.  In support of his claims against the MSPA and the MDA, Plaintiff alleges that MSPA's "hurricane preparation was woefully inadequate."[8]  Plaintiff also make numerous allegations which, viewed in the light most favorable to the Plaintiff, take issue with the adequacy of the MPSA's written hurricane procedures and the acts of the MSPA personnel prior to, during, and after the storm.  According to Plaintiff, the actions of the MSPA and MDA caused or contributed to the destruction of his property.[9]

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kaltenbach v. Richards*, 464 F.3d 524, 526 (5th Cir. 2006).  In considering a 12(b)(6) motion, the court is limited to the plaintiff's complaint. *Morin v. Caire,* 77 F.3d 116 (5th Cir. 1996).

The Mississippi Emergency Management Law, MISS. CODE ANN. § 33-15-1 *et seq.,*

---

[7] *See* Plaintiff's Complaint, Exhibit "B", Mississippi State Port Authority at Gulfport Hurricane Procedures, pg.1.

[8] *See* Plaintiff's Complaint, ¶ 33.

[9] *Id.* at ¶¶ 46-53.

constitutes Mississippi's comprehensive disaster response statute outlining the state's disaster management program. Contained within the law is an immunity provision. Pursuant to MISS. CODE ANN. § 33-15-21(a):

> (a) Neither the state nor any political subdivision thereof, *nor other agencies*, nor, except in cases of willful misconduct, the agents, employees, or representatives of any of them engaged in *any emergency management activities*, while complying with or attempting to comply with this article or any rule or regulation promulgated pursuant to the provisions of this article, shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.(emphasis added)

Mississippi agencies are specifically granted § 33-15-21 immunity. The scope of this immunity extends to "any emergency management activities". Generally,"emergency management" means the preparation for, the mitigation of, the response to, and the recovery from emergencies and disasters.[10] Under any objective reading of the Plaintiff's complaint it is clear that he seeks to impose liability upon the MSPA and the MDA for the implementation of hurricane procedures that are allegedly inadequate. He also seeks to impose liability upon these

---

[10](c) "Emergency management" means the preparation for, the mitigation of, the response to, and the recovery from emergencies and disasters. Specific emergency management responsibilities include, but are not limited to:
(I) Reduction of vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural, technological or man-made emergencies or hostile military paramilitary action.
(ii) Preparation for prompt and efficient response and recovery to protect lives and property affected by emergencies.
(iii) Response to emergencies using all systems, plans and resources necessary to preserve adequately the health, safety and welfare of persons or property affected by the emergency.
(iv) Recovery from emergencies by providing for the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies.
(v) Provision of an emergency management system embodying all aspects of preemergency preparedness and postemergency response, recovery and mitigation.
(vi) Assistance in anticipation, recognition, appraisal, prevention and mitigation of emergencies which may be caused or aggravated by inadequate planning for, and regulation of public and private facilities and land use. Miss. Code Ann. 33-15-5(c).

state agencies for their alleged failure to take preventative measures during the approach of the storm and corrective measures in its aftermath.  Significantly, § 33-15-21(a) would immunize emergency management responsibilities including the "provision of an emergency management system embodying all aspects of preemergency preparedness and postemergency response, recovery and mitigation."  *See* MISS. CODE. ANN. 33-15-5(c)(v).

The MSPA hurricane procedure, which Plaintiff descries as ill conceived, and the pre-storm and post-storm actions that the Plaintiff alleges was negligently executed, is precisely the "emergency management" conduct the legislature intended to insulate from civil liability through the enactment of MISS. CODE ANN. § 33-15-21(c).  For the reasons stated above, it is the opinion of the Court that under Mississippi law no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint.  Therefore,

**IT IS ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [4] the above styled and numbered cause pursuant to FED. R. CIV. P. 12(b)(6), filed July 28, 2006, should be, and is, hereby **GRANTED.**

**SO ORDERED AND ADJUDGED** this the 12th day of January, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE