IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JERRY YOUNG & PEGGY HANSEN**                          **PLAINTIFF**

**VS.**                                           **CIVIL ACTION NO. 1:06CV966HSO-JMR**

**CROWLEY LINER SERVICES, INC.**                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S
RULE 56(f) MOTION, AND GRANTING DEFENDANT'S
MOTION TO EXCLUDE EXPERT TESTIMONY**

BEFORE THE COURT is the Motion of Defendant Crowley Liner Services, Inc. ["Crowley"], for Summary Judgment [35-1], pursuant to FED. R. CIV. P. 56, filed in the above-captioned cause on July 23, 2008. Plaintiffs filed a Response on September 15, 2008 [41-1], and Defendant Crowley tendered a Rebuttal [45-1] on September 25, 2008. Defendant Crowley also filed a Motion to Exclude Expert Testimony of David E. Cole on July 23, 2008 [33-1].[1] In addition, Plaintiffs filed a Rule 56(f) Motion on December 8, 2008 [46-1]. Defendant filed a Response to this Motion on December 22, 2008 [48-1]. After consideration of the parties' submissions, the record, and the relevant legal authorities, and for the reasons discussed below, the Court finds that Crowley is entitled to judgment as a matter of law. Accordingly, the Motion for Summary

---

[1] Plaintiffs did not file a Response to Crowley's Motion pertaining to David Cole; however, since Plaintiffs did not rely on his opinions, reports or data in their Response, Memorandum Brief or legal arguments opposing summary judgment, the Court finds that this Motion does not preclude entry of summary judgment. In the alternative, the Court grants the instant Motion to Exclude as unopposed pursuant to Uniform Local Rule 7.2(C).

-1-

Judgment must be granted.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs owned a residential home located on Hardy Avenue in Gulfport, Mississippi, that was damaged or destroyed when Hurricane Katrina made landfall on August 29, 2005. At the time Hurricane Katrina struck, Crowley was engaged in containerized cargo operations at the Port of Gulfport, including the business of storing and/or transporting goods from the Port to destination points throughout the United States. According to a survey conducted at Crowley's request, Plaintiff's home was situated adjacent to Beach Boulevard/U.S. Highway 90 and was located at a distance of 1.8 miles from the West Terminal of the Port of Gulfport. *See* John Fowler's Aff. at p.2, att. as Ex. "J" to Def.'s Mot. for Summ. J.

Plaintiffs filed their Complaint on August 22, 2006, in the Circuit Court of Harrison County, Mississippi, First Judicial District, alleging that as a result of Defendant's negligence and gross negligence, specifically its failure to evacuate its shipping containers from the Port of Gulfport prior to Hurricane Katrina, or alternatively the failure to adequately secure its shipping containers, their property suffered substantial damage. Plaintiffs also assert claims for trespass, toxic trespass, and public nuisance allegedly caused by Crowley containers entering their property during Hurricane Katrina. Crowley filed a Notice of Removal in this Court on September 21, 2006.

## II. DISCUSSION

A.      Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment. The dispute must be genuine, and the facts must be material. *See Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999). With regard to "materiality," only those disputes of fact that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *See id.* (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, the opposing party

must present significant probative evidence, since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Shields v. Twiss,* 389 F.3d 142,149-50 (5th Cir. 2004)(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *See Anderson*, 477 U.S. at 249. The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *See Gaddis v. Smith & Nephew, Inc.,* 534 F. Supp. 2d 697, 699 (S.D. Miss. 2008).

B.  <u>Plaintiffs' Rule 56(f) Motion</u>

Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Plaintiffs move the Court to deny Defendant's Summary Judgment Motion, or alternatively for the Court to stay its ruling on this Motion in order for Plaintiffs to resume the deposition of Mr. Michael Hopkins. Plaintiffs claim that they have been "prohibited from conducting further discovery to fully develop their proofs on the issue of causation." Pls.' Rule 56(f) Motion at p. 2. Plaintiffs maintain that this "inability to conduct further discovery stems from the conduct of the Defendant, whose agent or agents possess particular knowledge on this aspect [causation] of plaintiffs' case." *Id.* at p. 2.

Defendant opposes Plaintiffs' Motion, in part on grounds that because Plaintiffs had ample time to resume and complete this deposition, their request is untimely. Defendant also submits that Plaintiffs are seeking evidence of subsequent remedial measures, which is not proper evidence to consider in connection with the Motion for

Summary Judgment.

Rule 56(f) states:

(f) When Affidavits Are Unavailable. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) deny the motion;
(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
(3) issue any other just order.

FED. R. CIV. P. 56(f).

Rule 56(f) "allows for further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Culwell v. City of Fort Worth,* 468 F.3d 868, 871 (5th Cir. 2006) (citation omitted). The Fifth Circuit has repeatedly admonished that Rule 56(f) "may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate how the [requested discovery or time to provide other summary-judgment evidence] will enable him to rebut the movant's allegations of no genuine issue of material fact." *See Dreyer v. Yelverton,* 291 Fed. App'x 571, 577-78, 2008 WL 3911072, 5 (5th Cir. 2008) (*quoting Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 28 F.3d 1388, 1396 (5th Cir. 1994)).

In the present case, Plaintiffs contend that they need additional discovery, in the form of completion of Michael Hopkins' deposition, to support their causation argument. Plaintiffs must establish how this additional discovery will create a

genuine issue of material fact. "A party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Adams v. Travelers Indem. Co. of Conn.,* 465 F.3d 156, 162 (5th Cir. 2006)(footnotes and internal quotation marks omitted).

After consideration of the arguments and authorities set forth in connection with this issue, the Court finds that Plaintiffs have not demonstrated that additional discovery would serve to create genuine issues of material fact. The deposition of Michael Hopkins, which presently comprises 276 pages, is on record and is being considered in connection with Defendant's Motion for Summary Judgment. Moreover, the evidence sought by Plaintiffs, to the extent they have articulated it, would not be admissible at the summary judgment stage. *See* FED. R. EVID. 407. Relief under Rule 56(f) is not warranted here.

C. <u>Plaintiffs' Negligence Claims</u>

Crowley seeks summary judgment on Plaintiffs' negligence claims, contending that Plaintiffs have failed to make the requisite showing that Katrina's force was foreseeable, or that Crowley breached a legal duty owed to Plaintiffs, if any. Plaintiffs contend that "the strength of their state driven cause of action lies within the realm of Mississippi's law of nuisance":

> Establishing the liability of Crowley upon this theory is completely different than showing evidence sufficient to meet the traditional elements of a negligence cause of action. Indeed long established Mississippi Supreme Court precedents establish a defendant's responsibility upon a strict or absolute liability basis, a standard far

different from the traditional showing of duty, breach, causation and damages to make out actionable negligence.

Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at p. 6.

Plaintiffs assert that, based on their recovery theory under the law of nuisance, "the recent decision announced by this tribunal in *Charlotte Williams v. Chiquita Fresh North America, LLC, et al.,* No. 1:06cv658HSO-JMR, and those of Judge Friedman in *Lee Brother, LLC v. Crowley Liner Services, Inc.,* and *Royal Beach Hotel, LLC. v. Crowley Liner Services, Inc.* do not have any application (founded as they were upon a traditional negligence analysis, *i.e.,* sufficiency/insufficiency of evidence to show the existence of duty and breach of duty)." Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. at p. 6. Notwithstanding the foregoing, Plaintiffs' Complaint does assert a negligence cause of action. Therefore, out of an abundance of caution, the Court will address this claim.

To succeed on a claim for negligence, Plaintiffs must show "(1) the existence of a duty 'to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury', (2) a breach of that duty, (3) causal relationship between the breach and alleged injury, and (4) injury or damages." *Meena v. Wilburn,* 603 So. 2d 866, 870 n.5 (Miss.1992)(*citing and quoting Burnham v. Tabb,* 508 So. 2d 1072, 1074 (Miss. 1987)). The presence of a duty and breach of that duty are essential elements prior to any finding of negligence. *See Rein v. Benchmark Const. Co.,* 865 So. 2d 1134, 1143 (Miss. 2004)(*citing Strantz v. Pinion,* 652 So. 2d 738, 742 (Miss. 1995)).

(1) <u>Existence of a Duty</u>

Plaintiffs claim that Crowley had a legal duty to remove or secure all its cargo in preparation for Hurricane Katrina:

> [f]irst, Crowley was required by the Port to abide by the provisions of the Plan promulgated by the Port, including being prepared to leave the Port and secure **and/or remove** its property. This the company failed to do, allowing to remain on site many, many empty containers owned or controlled by this defendant. Second, photographs demonstrate the damage two of them did to the property possessed and owned by plaintiffs. The containers were washed into plaintiff's property by Hurricane Katrina, a storm defendant was advised about and expected, by Port regulation, to take precautions on and guard against.

Pls.' Mem. in Resp. to Def.'s Mot. for Summ. J. at p. 10 (emphasis in original).

Mississippi courts have held that the determination of the existence vel non of a duty of care is a question of law to be decided by the court. *See Foster by Foster v. Bass,* 575 So. 2d 967, 972 (Miss. 1990). "The important component of the *existence of the duty* is that the injury is '*reasonably foreseeable*,'" and thus it is an appropriate issue for the trial judge to decide. *Rein,* 865 So. 2d at 1143 (*quoting Lyle v. Mladinich,* 584 So. 2d 397, 399 (Miss. 1991) (emphasis in original)).

The record in this case unequivocally establishes that Port officials closely tracked Hurricane Katrina and its path from the dates when warnings were first issued, continuing through Friday, August 26, 2005, and until Monday, August 29, 2005. Plaintiffs' Complaint states that it was on Thursday, August 25, 2005, at 5:00 p.m., when the National Hurricane Center upgraded Katrina to a hurricane. *See* Pls.'

Compl. ¶ 19. Richard G. Henning, Defendant's meteorological expert and a Lieutenant Colonel in the United States Air Force, served as the Mission Director within the 53rd Weather Reconnaissance Squadron and was responsible for all meteorological data collection during hurricane penetration flights, including Hurricane Katrina. Henning stated that "[d]espite all prior forecasts of landfall . . . it was not until 4:00 p.m. on Friday, August 26, 2005, that the official National Hurricane Center ["NHC"] forecast for the landfall of Hurricane Katrina changed to include the Mississippi Gulf Coast, a shift of nearly 180 miles to the west from a previously predicted landfall track . . . " Richard Henning's Aff. ¶¶ 3 and 7, att. as Ex. "A" to Crowley's Mot. for Summ. J. The record further establishes that the Port and its tenants began preparations as soon as the foregoing information became known.

At the time Hurricane Katrina made landfall, Mr. Robert Weist was serving as the Terminal Manager at the Port and oversaw the execution of the Hurricane Contingency Plan for the Port of Gulfport. *See* Robert Weist's Aff. ¶ 6, att. as Ex. "E" to Crowley's Mot. for Summ. J. Weist stated in part that:

> Crowley implemented its Gulfport Hurricane Contingency Plan for the Port, even before learning that Hurricane Katrina was threatening landfall on the Mississippi Gulf Coast. I personally contacted customers and their trucking companies to request that they remove cargo containers and trailers from Crowley's terminal at the Port. I gave them a deadline of noon on Sunday, August 28, 2005.

Weist also stated that "following ... efforts [to have containers physically moved from the port], Crowley engaged its stevedore company at the Port to block stow the

-9-

containers, trailers and equipment on its terminal." *Id.* at ¶ 7. Thus, Crowley utilized the block stow method to store its containers at the Port. Block stowage is a storage mechanism employed at several ports across the United States, and is often incorporated into port hurricane contingency plans. Block stowage can be defined as:

> ...the arrangement of cargo in a given space and in such a manner so as to ensure its easy identification, segregation and subsequent handling. Block stowage tends to confine, into one discrete and tightly drawn area, a homogenous grouping of similar cargo units. Consequently, block stowage typically offers the attributes of stability and strength in circumstances where such attributes are desired.

Report of Ronald Signorino, at p. 6, att. as Ex. "1" to Signorino's Aff., att. as Ex. "C" to Def. Mot. for Summ. J.

Mr. Signorino was tendered and accepted by this Court as an expert in the field of marine terminal operations, following Daubert hearings conducted on April 23-24, 2008, in *Charlotte Williams v. Crowley Liner Services*, Civil Action No. 1:06cv658 (S.D. Miss., July 9, 2008); *Joe & Nancy DeFazio v. Crowley Liner Services,* 2008 WL 2788732 (S.D. Miss., July 14, 2008); and *David and Amy Wheeler,* Civil Action No. 1:07cv1096 (S.D. Miss., August 5, 2008).

Mr. Signorino's testimony established that he was responsible for formulating and implementing hurricane plans and preparations for ports located in Baltimore, Maryland; Norfolk, Virginia; Charleston, South Carolina; Miami, Florida; New Orleans, Louisiana; and Houston, Texas. *See* p. 116, Tr. of Daubert Hearing conducted on April 23, 2008. In his Affidavit, Signorino concludes that, as a matter of record, prior to Hurricane Katrina "there was no recorded incident in the United States

of a hurricane striking a marine terminal facility and separating a block stow beyond the perimeters of an affected facility or forcing containers/trailers beyond the perimeters of an affected facility." Ronald Signorino's Aff. ¶ 7, att. as Ex. "C" to Def. Mot. for Summ. J.

The record establishes beyond dispute that the Port and its tenants had "never experienced the separation of a block stow beyond the perimeters of its marine terminal at the Port or any of its marine terminals around the world prior to Hurricane Katrina." *See* Michael Hopkins' Aff. ¶ 8, att. as Ex. "D" to Crowley's Mot. for Summ. J.; Robert Weist's Aff. ¶ 8, att. as Ex. "E" to Crowley's Mot. for Summ. J. Based upon the undisputed evidence, it is clear that Crowley implemented its hurricane plan based on the predictions, reports, advisories and warnings issued by the National Hurricane Center. *See* Report of Ronald Signorino, at p. 9, att. as Ex. "1" to Signorino's Aff., att. as Ex. "C" to Def. Mot. for Summ. J. (detailing protocol for the Port both at 72 hours and at 48 hours prior to landfall).

In *Royal Beach Hotel, LLC v. Crowley Liner Services, Inc.,* 2007 WL 1499815, *2 (S.D. Miss. March 14, 2007), and *Lee Brother, LLC v. Crowley Liner Services*, 2007 WL 188858744 (S.D. Miss. June 26, 2007), two cases very similar, if not almost identical, to the present one, United States District Judge Bernard A. Friedman made determinative findings addressing the existence and breach of any duties owed by Port tenants:

> . . . [A]s a matter of law, Crowley did not breach any duty it owed to plaintiff. . . . [and did] as a matter of uncontested fact, take all measures

-11-

as were prudent and reasonable under the circumstances in the short period of time between the issuance of the warning and the arrival of the hurricane. *The court also holds, as a matter of law, that defendant had no duty to take additional measures, beyond those described below, because the enormously destructive force of Hurricane Katrina was unprecedented and defendant could not reasonably have foreseen that its containers might wash and blow away and cause damage to neighboring property unless additional, extraordinary measures were taken to secure or remove them.*

*Lee Brother, LLC,* 2007 WL 1858744, at *5 (emphasis added).

The court also holds, as a matter of law, that defendant had no duty to take additional measures, beyond those described below, because the enormously destructive force of Katrina was unprecedented and defendant could not reasonably have foreseen that its containers, trailers and chassis might wash and blow away and cause damage to neighboring property unless additional, extraordinary measures were taken to secure them.

*Royal Beach Hotel, LLC,* 2007 WL 1499815, at *2.

* * *

... [T]he court concludes that both the extraordinary force of this storm and its ability to transport containers, trailers and/or chassis away from the port and onto and into neighboring property was unforeseeable, as these were "unusual and improbable or extraordinary occurrence[s]," *Rein,* 865 So.2d at 1144; *that defendant had no duty to take additional measures, beyond those described, to secure its property; and that defendant breached no duty to plaintiffs. The court rejects plaintiffs' view that defendant had a duty to "ensure" its containers would not wash away. Defendant is not an insurer, and its duty was only to take reasonable measures to prevent foreseeable harm from occurring to others.*

The court concludes that plaintiffs' negligence claim fails because plaintiffs cannot prevail on two elements as to which they have the burden of proof. Under these circumstances, the court need not address defendant's Act of God defense.

*Id.* at * 5 (emphasis added).

"The doctrine of 'law of the case' is a rule of practice under which a rule of law enunciated by a federal court 'not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but (also) establishes the law which other courts owing obedience to it must, and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case.'" *Morrow v. Dillard,* 580 F.2d 1284, 1289-90 (5th Cir. 1978)(*quoting* 1B Moore's Federal Practice P 0.404(1) (2d ed. 1974). "Where arguments have been considered by another judge in this district in cases involving very similar facts and the same controlling principles of law, principles of stare decisis, as well as the sound reasoning of that judge's opinion, dictate that this Court reach the same result." *Giles v. University of Mississippi ex rel. Khayat,* 2000 WL 33907681, 3 (N.D. Miss. 2000)(*citing Barrett v. Khayat,* Civil Action No. 3:97-CV-211-B-A (N.D. Miss. 1999)).

Keeping the foregoing rules in mind, the Court finds that the principles of law stated in Judge Friedman's decisions must carry great weight in this case. The legal issues, as well as the facts, are so similar, if not nearly identical, in this case to those presented in both *Lee Brother* and *Royal Beach*, that the undersigned is compelled to accord those decisions great deference.

The uncontested facts of this case coupled with general principles of Mississippi law on negligence lead to the conclusion that Crowley did not owe Plaintiffs a duty to take any further steps or precautions, beyond those it had already taken, prior to the

onslaught of the storm. Defendant could not reasonably have foreseen that its containers might wash and blow away unless additional measures were taken to secure or remove them. For these reasons, this Court need not resolve the question of whether, even at a distance of 1.8 miles from the Port, Crowley even owed Plaintiffs a duty in the first instance.[2]

(2) <u>Breach of Duty</u>

The record demonstrates beyond dispute that containerized cargo operations did not begin at the Port of Gulfport until 1973, several years after the ravages of Hurricane Camille. Therefore, even with full and complete knowledge of Camille's destruction, Crowley could not have had a basis for comparison as containers were not present at the Port during Camille.

In this case, Hurricane Katrina was unprecedented in its force and surge levels. The evidence before this Court demonstrates that the block stow method employed by Crowley was a time-tested and reliable method for storing cargo containers, at least until Katrina. Based on the undisputed evidence tendered in this case and the relevant law, including this Court's previous decisions, the undersigned must conclude that Crowley did not breach any duty to Plaintiff, particularly since Crowley "had no

---

[2] In *Lee Brother, LLC v. Crowley Liner Services, Inc.*, 2007 WL 1858744, *3 (S.D. Miss. 2007), the distance between the Port and the subject property was not made part of the record. Notwithstanding, Judge Friedman utilized Mapquest to determine that the plaintiff's property was located approximately three-quarters of a mile from the Port of Gulfport. Judge Friedman determined that "Crowley owed a general duty of care even to owners of property located three-quarters of a mile from the port." *Id.*

duty to take additional measures" beyond those described in the record. *See Royal Beach, LLC*, 2007 WL 1499815 at *2.

Because the two essential elements of duty and breach of duty are absent in this case, Crowley is entitled to summary judgment on Plaintiffs' negligence claims.

D.      <u>Plaintiff's Trespass, Toxic Trespass & Nuisance Claims</u>

The record establishes that Plaintiffs' home was struck by numerous Crowley containers. As a result, Plaintiffs claim that Crowley is liable to them on theories of trespass and nuisance. "Under Mississippi case law, such claims [trespass and nuisance] provide a mechanism to recover damages for injury not only to the physical realty, but also, to those rights incidental to the ownership of the property." *Great Northern Nekoosa Corp. v. Aetna Cas. and Sur. Co.*, 921 F. Supp. 401, 416 (N.D. Miss. 1996). Each of Plaintiffs' claims will be considered in turn.

Plaintiffs argue that because their property was damaged by the physical invasion of Crowley's cargo containers, recovery of damages is permitted upon a showing that a physical invasion caused damages to land by an agency set in motion by Defendant. In other words, no intent to enter or damage the property is required. *See* Mem. in Resp. to Def. Crowley's Mot. for Summ. J. at p. 12 (*quoting City of Jackson v. Filtrol Corp.*, 624 F.2d 1384 (5th Cir. 1980)).

Crowley once more counters that Plaintiffs' damages were not reasonably foreseeable, based upon past experience and Crowley's preparations for Hurricane Katrina. Crowley maintains that Mississippi precedent holds that a trespass claim

requires the "intention to enter upon the particular piece of land in question." *Thomas v. Harrah's Vicksburg Corp.,* 734 So. 2d 312, 316 (Miss. Ct. App. 1999) (*citing* the Restatement (Second) of Torts § 163).

In order to support a claim for trespass, Plaintiffs must establish the following elements: 1) an intrusion upon the land of another without a license or other right for one's own purpose; 2) damage to the plaintiff as a result of physical invasion of the land; and 3) credible evidence that [the Defendant] is the party responsible for the tort. *See Monsanto Co. v. Scruggs*, 342 F. Supp. 2d 602, 606 (N.D. Miss. 2004). Whether or not Crowley entered upon Plaintiffs' land for its own purpose, and whether it was responsible for the containers being on the Plaintiffs' property, merit examination.

In *Alexander v. Brown*, 793 So. 2d 601 (Miss. 2001), plaintiffs sued the defendants for trespass. In that case, the evidence established that the Brown defendants hired a third party to perform certain services and the third party committed a trespass upon plaintiffs' property. The Mississippi Supreme Court, noting the lack of evidence demonstrating that the defendants caused the third party to commit the trespass, held that: "the only evidence linking the Browns [defendants] to McGowan [third party] was that the Browns retained McGowan's services. This fact alone does not render them liable for his torts. If it did, then the Alexanders [plaintiffs] have an additional problem, since they retained his services too." *Id.* at 605.

Based on the record, the evidence establishes that Crowley lacked any intent, general or otherwise, for its containers to enter upon Plaintiffs' property, or that the

containers entered upon Plaintiffs' property for Crowley's own purpose. Nor can it be said that Crowley was "responsible" for the "tort" since it was Crowley's objective that the containers not leave the Port's perimeter during Katrina. Rather, it was the unprecedented force of Hurricane Katrina that moved the containers to Plaintiffs' property. The mere fact that movement of Crowley containers resulted in their placement on Plaintiffs' property cannot be said to amount to a voluntary act by, or natural consequences that are attributable to, Crowley sufficient to support Plaintiffs' trespass claim. Because summary judgment is required on the underlying claim for trespass, the evidence similarly does not support Plaintiffs' toxic trespass claim. Defendant is entitled to judgment as a matter of law on these claims.

While Plaintiffs' Complaint contains a claim for public nuisance, their briefs and arguments for recovery are grounded in private nuisance law. A private nuisance is a non-trespassory invasion of another's interest in the private use and enjoyment of land. *See* Restatement (Second) of Torts § 821(d) (1979).

A defendant may be liable for a nuisance:

if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either:
(a) intentional and unreasonable, or
(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Restatement (Second) of Torts § 163 (1979).

Crowley contends that Plaintiffs' nuisance claim cannot survive summary judgment, inasmuch as a claim for nuisance requires, at a minimum, a showing of negligence, which the Court has already concluded Plaintiffs cannot establish. Based on the record, the Court concludes there is no evidence to support an argument that Crowley intentionally and unreasonably invaded Plaintiffs' interest in the private use and enjoyment of her land.

Plaintiffs claim that Defendant's failure to "properly and adequately secure the Port and properties, created a significant interference with the public health, the public safety, peace, comfort and convenience." Pls.' Compl. ¶ 51. A public nuisance is defined as an:

> (1) unreasonable interference with a right common to the general public.
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>> (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>>
>> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
>>
>> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

Restatement (Second) of Torts § 821(b) (1979).

To the extent Plaintiffs allege public nuisance, this claim fails for the same reasons as their private nuisance claim, inasmuch as Plaintiffs cannot establish that

Defendant unreasonably interfered with a right common to the general public.

As for any negligent or unreasonable conduct, this Court has previously determined in this case, as well as in *Royal Beach* and *Lee Brother,* that there were no conditions created by Hurricane Katrina which were sufficiently reasonably foreseeable, to establish a duty owed to Plaintiffs by Crowley to take any steps beyond those which were taken. Therefore, Crowley is entitled to judgment as a matter of law on Plaintiffs' nuisance claims.

## III. CONCLUSION

The circumstances of this case are unfortunate. However, based upon the undisputed competent summary judgment evidence and established legal precedents of this Court, Plaintiffs' negligence, trespass, and nuisance claims cannot withstand summary judgment. Accordingly,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiffs' Rule 56(f) Motion [46-1] for Denial of Entry of Summary Judgment filed on December 8, 2008, should be and is hereby **DENIED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion [35-1] of Defendant Crowley, for Summary Judgment filed on July 23, 2008, pursuant to FED. R. CIV. P. 56, should be and is hereby **GRANTED**.

**IT IS, FURTHER ORDERED AND ADJUDGED** that, Defendant Crowley's Motion to Exclude Expert Testimony of David E. Cole [33-1] filed on July 23, 2008, should be and is hereby **GRANTED.**

**SO ORDERED AND ADJUDGED,** this the 20th day of March, 2009.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE